IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| KEVIN LeRAY HENDERSON, #1786607 | § | |
| VS. | § | CIVIL ACTION NO. 2:14cv941 |
| DIRECTOR, TDCJ-CID | § | |

**MEMORANDUM OPINION ADOPTING REPORT AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner Kevin Henderson (Henderson), proceeding *pro se* and *in forma pauperis*, filed this application for the writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his conviction. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

Henderson challenges his Upshur County conviction for indecency with a child, with two prior felony convictions. On May 30, 2012, Henderson was sentenced to eighty years' imprisonment after a jury found him guilty. He filed a direct appeal, in which the Sixth Court of Appeal affirmed his conviction with a written opinion. *See Henderson v. State*, 2013 WL 1460501 (Tex.App.—Texarkana 2013). The Texas Court of Criminal Appeals refused his petition for discretionary review in June 2013.

Subsequently, in May 2014, Henderson filed a state application for a writ of habeas corpus, which was denied in July 2014 without written order. He filed this timely federal petition in October 2014.

## II. Factual Background

The Sixth Court of Appeals summarized the facts of this case as follows:

> R.A. testified that when she returned after picking up her daughter, M.A., from pre-kindergarten classes, she saw Henderson working in the second floor apartment above her first floor apartment. After being in the apartment "a little bit of time," R.A. and M.A. returned to the parking lot. R.A. testified that she needed to untangle some hangers before bringing them in the apartment. R.A. placed M.A. in the backseat, but testified, "She would be in the truck for a little while and then she would get out and I'd have to scoop her back in so I can keep an eye on her." R.A. then described the following events:
>
>> Like I said, it was hard to keep her in—intact in the Suburban. I kept having to go after her, but there for a while, you know, I just got really occupied by untangling hangers that there was just silence and, you know, with children if it's quiet, they're into something or they've run off and it worried me and I called out for M.A., she didn't answer me. At that point I walked around my truck, the Suburban, and I said M.A., and I didn't see her directly in front, she was on the other side in the parking area but at the corner of the passenger of my Suburban and I saw that she was looking up at the apartment and I looked up and I saw Mr. Henderson, he was masturbating and she saw him and I screamed and I grabbed her and I took her in my apartment.
>> . . . .
>
> He was standing at the door, the door was wide open and it was—the way the door was open it was kind of in the kitchen area and he was standing there. It was wide enough and I saw what he was doing and my daughter saw. She's—I don't know how long she saw but she saw him do that. She was paying attention to what he was doing.
>
> On appeal and at trial, Henderson argued he was inside the apartment. R.A. testified Henderson was standing "at the door" and the door was wide open. After R.A. screamed, picked up her child, and when inside her apartment, Henderson ran down the stairs saying, "[Y]ou didn't see anything, y'all didn't see anything, nothing happened, I'm going to go talk to [A.D.]."
>
> The State introduced evidence of an extraneous offense. J.B., a child under seventeen years of age who resided at the apartment complex, testified that she observed Henderson masturbating in a doorway on two occasions. On the first occasion, J.B. saw Henderson "standing in the doorway with his hands in his pants and I just saw like his hands moving and stuff, but I didn't know what he was doing for sure or whatever." When asked, "Was he inside the apartment or outside," J.B. responded, "He wasn't like—it was just in the doorway. I don't know how to explain it . . . ." On the second occasion, Henderson "expos[ed] his genitals." The door was open and Henderson was standing "in the doorway."

*Henderson*, 2013 WL 1460501 at *2.

**III. Henderson's Federal Habeas Petition and the Response**

In his underlying federal petition, Henderson raised three claims for relief, maintaining that: (1) the trial court abused its discretion when admitting evidence of extraneous offenses; (2) counsel was ineffective for failing to investigate the facts and for failing to file a motion to quash the indictment; and (3) actual innocence. In response, Respondent argued that counsel was not ineffective, citing defense counsel's affidavit filed in the state habeas case, and that admitting Henderson's extraneous offenses was proper.

After a review of the pleadings and the state court record, the Magistrate Judge issued a Report, (Dkt. #13), recommending that Henderson's petition be dismissed with prejudice. The Magistrate Judge also recommended that he be denied a certificate of appealability. Henderson has filed timely objections, (Dkt. #15).

**IV. Standard of Review**

The role of federal courts in reviewing habeas corpus petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a federal constitutional right; federal relief is unavailable to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993); *see also Estelle v. McGuire*, 503 F.3d 408, 413 (5th Cir. 2007) ("We first note that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citation omitted). When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review error under state law. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

Furthermore, federal habeas review of state court proceedings is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. Under the AEDPA, which imposed a number of habeas corpus reforms, a petitioner who is in custody "pursuant to the judgment of State court" is not entitled to federal habeas corpus relief with respect to any claim that was

adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States; or
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). The AEDPA imposes a "highly deferential standard for evaluating state court rulings," which demands that federal courts give state court decisions "the benefit of the doubt." *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted); *see also Cardenas v. Stephens*, 820 F.3d 197, 201-02 (5th Cir. 2016) ("Federal habeas review under the AEDPA is therefore highly deferential: The question is not whether we, in our independent judgment, believe that the state court reached the wrong result. Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim."). Given the highly deferential standard, a state court's findings of fact are entitled to a presumption of correctness and a petitioner can only overcome that burden through clear and convincing evidence. *Reed v. Quarterman*, 504 F.3d 465, 490 (5th Cir. 2007).

**V. Henderson's Objections and Discussion**

As mentioned, Henderson maintained that the trial court abused its discretion when admitting evidence of extraneous offenses because it was only introduced to establish character conformity. The Magistrate Judge found that (1) the appellate court specifically addressed and rejected this claim on direct appeal, which Henderson failed to demonstrate was unreasonable or contrary to federal law; (2) the extraneous evidence was relevant to show knowledge; and (3) that the extraneous offense was rationally connected to Henderson's charge.

On objection, Henderson insists that the State lied when it maintained that he previously exposed himself to a different child on two occasions. He claims that the victim lied in court and that there exists reasonable doubt. Moreover, Henderson notes that he wanted to testify at trial, but was

4

advised not to. Finally, he insists that he could not have been seen exposing himself inside second-floor apartment doorway from the parking lot ground.

The Magistrate Judge correctly determined that Henderson's claim was meritless. Evidence of other wrongs, acts, or crimes is not admissible to prove the character of the defendant in order to demonstrate that the acted in conformity or similarly therewith. *See* Tex. R. Cr. Evid. 404(b)(1). Crucially, however, such evidence **may be admissible** if it has relevance apart from the tendency to show that the defendant acted in conformity with those other wrongs, acts, or crimes. *See Montgomery v. State*, 810 S.W.2d 372, 386 (Tex.Crim.App. 1990) ("Hence, a party may introduce such evidence where it logically serves to make . . . more probable or less probable as an element of fact.") (emphasis supplied). Stated differently, an extraneous offense may be admitted—without violating the due process clause—if the State demonstrates that the extraneous offense is "rationally connected with the offense charged." *See Story v. Collins*, 920 F.2d 1247, 1254 (5th Cir. 1991) (internal citation omitted); *Bagley v. Collins*, 1 F.3d 378, 380 (5th Cir. 1993).

Here, Henderson's objections are an attempt to relitigate his underlying claim, which was thoroughly analyzed on direct appeal. While Henderson objects to the Report, he does not specifically object to the Magistrate Judge's analysis of his claim. Instead, he raises new issues for the first time on objection: The State lied about the extraneous offense; the victim lied; he wanted to testify but was told not to; and the view from the second-floor to the parking lot would not have allowed the victim's mother to see him expose himself. Because issues raised for the first time on objection are not properly before the Court, Henderson's objections are without merit. *See Omran v. Prator*, 674 Fed.App'x 353, 355 (5th Cir. 2016) ("Omran's equal-protection claim will not be considered because it was raised for the first time in his objections to the magistrate judge's report and recommendation"); *Finley v. Johnson*, 243 F.3d 215, 222 n.3 (5th Cir. 2001) ("We have held that issues raised for the

5

first time in objections to the report of a magistrate judge are not properly before the district judge."); *United States v. Armstrong*, 951 F.2d 626 (5th Cir. 1992).

## VI. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Petitioner objected. See 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the United States Magistrate Judge is correct and the Petitioner's objections are without merit. Accordingly, it is

**ORDERED** that the Petitioners' objections, (Dkt. #15), are overruled and the Report of the Magistrate Judge, (Dkt. #13), is **ADOPTED** as the opinion of the District Court. Furthermore, it is

**ORDERED** that the above-styled petition for the writ of habeas corpus is **DISMISSED WITH PREJUDICE**. It is also

**ORDERED** that Petitioner Henderson is **DENIED** a certificate of appealability *sua sponte*. Finally, it is

**ORDERED** that any and all motions which may be pending in this action are hereby **DENIED**.

**So ORDERED and SIGNED this 7th day of February, 2018.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE